1   Mark E. Ellis - 127159
    Lawrence K. Iglesias - 303700
2   ELLIS LAW GROUP LLP
    1425 River Park Drive, Suite 400
3   Sacramento, CA 95815
    Tel: (916) 283-8820
4   Fax: (916) 283-8821
    mellis@ellislawgrp.com
5   liglesias@ellislawgrp.com

6   Attorneys for
    DEFENDANT RASH CURTIS & ASSOCIATES

7

8

9             UNITED STATES DISTRICT COURT

10          EASTERN DISTRICT OF CALIFORNIA

11   JOHN MCBRIDE,                Case No.: 2:16-CV-02390 TLN-CKD

12       PLAINTIFF,           **DEFENDANT RASH CURTIS &**
                           **ASSOCIATES' MOTION FOR SUMMARY**
13   v.                            **JUDGMENT OR PARTIAL SUMMARY**
                           **JUDGMENT [FRCP 56(c)]**
14   RASH CURTIS & ASSOCIATES,

15       DEFENDANT.         **DATE:**      **April 19, 2018**
                           **TIME:**      **2:00 P.M.**
16                            **DEPT:**     **2, 15^(TH) FL**
                           **HONORABLE TROY L. NUNLEY**

17

18

19

20

21

22

23

24

25

26

27

28

---

TABLE OF CONTENTS

I.  INTRODUCTION ......................................................................................................... 1

    A.  Defendant is Entitled to Summary Judgment as to Plaintiff's TCPA Cause of Action Because Defendant Did Not Use *an* "ATDS" Dialing System .................................. 1

    B.  Defendant is Entitled to Summary Judgment as to Plaintiff's TCPA Cause of Action Because Defendant Called Plaintiff's Cell Phone With Prior Express Consent Obtained From Its Creditor-Client to Whom Plaintiff Had Provided Consent, and Because Plaintiff Expressly Consented to be Called by Defendant Directly ................ 2

    C.  Rash Curtis Is Entitled to Summary Judgment as to Plaintiff's FDCPA Cause of Action As A Matter of Law ......................................................................................... 3

    D.  Rash Curtis is Entitled to Summary Judgment as to Plaintiff's Rosenthal Act Cause of Action As A Matter Of Law ...................................................................................... 5

II.  FACTUAL BACKGROUND ....................................................................................... 5

III. PLAINTIFF'S CLAIMS ............................................................................................... 8

    A.  The Telephone Consumer Protection Act Claim – 47 U.S.C. § 227 ....................... 8

    B.  The Fair Debt Collection Practice Act Claims, 15 U.S.C. §§ 1692, *et seq.* ...................... 9

    C.  The Rosenthal Fair Debt Collection Practice Act Claims, Cal. Civ. Code §§ 1788, *et seq.* .............................................................................................................................. 9

IV.  ANALYSIS ................................................................................................................. 10

    A.  Plaintiff's TCPA Claim Fails Because Rash Curtis Did Not Use An "ATDS" to Call Plaintiff ................................................................................................................. 10

    B.  Plaintiff's TCPA Claim is Also Barred by The Affirmative Defense Of "Prior Express Consent" ................................................................................................................... 10

        1.  Rash Curtis Had Plaintiff's and/or His Wife's "Prior Express Consent" At All Times Either Directly Or Vicariously ................................................................. 10

        2.  Plaintiff Did Not Effectively Revoke Consent To Be Called ....................... 11

        3.  The Calls Placed After Consent Was Purportedly Revoked Were Not Made "Knowingly or Willfully" Without Consent ................................................................. 13

    C.  Defendant Is Entitled to Summary Judgment on Plaintiff's FDCPA And Rosenthal Act Claims ............................................................................................................... 14

1.  **Plaintiff Cannot Establish A Violation Under 15 U.S.C. § 1692d(5)** ..........................14

2.  **Plaintiff Lacks Standing to Assert a Rosenthal Act Claim Under Cal. Civ. Code §§ 1788.11(d)-(e)** ................................................................................17

3.  **Plaintiff Cannot Establish A Separate Violation Under Cal. Civ. Code §§ 1788.11(d)-(e)** ...........................................................................................17

4.  **Plaintiff's Rosenthal Act Claim Under Cal. Civ. Code § 1788.17 Fails As A Matter Of Law Because Rash Curtis Did Not Violate the FDCPA** ..........................18

5.  **Plaintiff Cannot Demonstrate That He Suffered Legally Cognizable Actual Injuries In The Form Of Emotional Distress, and Defendant Seeks Partial Summary Judgment As A Matter Of Law Under the FDCPA and Rosenthal Act On His Actual Damages Claim** ..........................18

**V.   CONCLUSION** ........................................................................................ **19**

TABLES

**Cases**

*ACA Int'l v. FCC,* 2018 WL 1352922 (D.C. Cir. Mar. 16, 2018) ..................................... 1, 8, 10

*Arteaga v. Asset Acceptance, LLC,* 733 F.Supp.2d 1218 (E.D. Cal. 2010) ...................... 3, 5, 15, 18

*Baisden v. Credit Adjustments, Inc.,* 813 F.3d 338 (6th Cir. 2016) ...................................... 8

*Beattie v. D.M. Collections, Inc.,* 754 F.Supp. 383 (D. Del. 1991) ..................................... 4, 19

*Bey v. Daimler Chrysler Servs., LLC,* 2006 WL 361385 (D.N.J. Feb. 15, 2006) ..................... 16

*Bundren v. Superior Court,* 145 Cal.App.3d 784 (1983) ...................................................... 19

*Carmen v. CBE Group,* 782 F.Supp.2d 1223 (D. Kan. 2011) ................................................ 15

*Celotex Corp. v. Catrett,* 477 S.Ct. 2548 (1986) ......................................................... 10, 11

*Chavious v. The CBE Group,* 2012 WL 113509, at *2 (E.D. NY 1/12/2012) ............................ 15

*Christy v. EOS CCA,* 905 F.Supp.2d 648 (E.D. Pa. 2012) ..................................................... 19

*Costa v. National Action Financial Services,* 634 F.Supp.2d 1069 (E.D. Cal. 2008) ........... 4, 10, 19

*Dombrowski v. Eastland,* 87 S.Ct. 1425 (1967) .................................................................... 13

*First National Bank of Arizona v. Cities Services Co.,* 88 S.Ct. 1575 (1968) ......................... 13

*Gager v. Dell Fin. Servs., LLC,* 727 F.3d 265 (3d Cir. 2013) ............................................... 12

*Girard v. Ball,* 125 Cal.App.3d 772 (1981) .......................................................................... 4

*Gouskos v. Aptos Village Garrage, Inc.,* 94 Cal.App.4th 754 (2001) ................................. 5, 17

*Hudson v. Sharp Healthcare,* 2014 WL 2892290 at *3 (S.D. Cal. 2014) .......................... 2, 3, 9, 13

*In re Runyan,* 530 B.R. 801 (Bankr. M.D. Fla. 2015) ......................................................... 12

*Jiminez v. Accounts Receivable Mgmt.,* 2010 WL 5829206 at *5 (C.D. Cal. 2010) ........... 3, 5, 15, 18

*Jones v. Rash Curtis & Associates,* 2011 WL 2050195, *3 (N.D. Cal. 2011) ..................... 4, 5, 15, 18

*Kennedy v. Applause, Inc.,* 90 F.3d 1477 (9th Cir. 1996) ..................................................... 11

*Lynch v. Nelson, Watson & Assoc., LLC,* 2011 WL 2472588, at *2 (D. Kan. 6/11/11) ............... 15

*Mais v. Gulf Coast Collection Bureau, Inc.,* 768 F.3d 1110 (11th Cir. 2014) ........................ 3, 9

*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012) ........................................2, 10

*Ross v. Creel,* 100 Cal.App.4th 736 (2002) ..........................................................................4, 19

*Saltzman v. I.C. System, Inc.*, 2009 WL 3190359 (E.D. Mich. 2009) ..............................14, 15

*Symonds v. Mercury Savings and Loan Assn.*, 225 Cal.App.3d 1458 (1990) ......................19

*Thomas v. LDG Financial Servs., Inc.*, 463 F.Supp.2d 1370 (N.D. Ga. 2006) ....................19

*Tucker v. The CBE Group Inc.*, 710 F.Supp.2d 1301 (M.D. Fla. 2010) ...............4, 14, 15, 18

*Udell v. Kansas Counselors, Inc.*, 313 F.Supp.2d 1135 (D. Kan. 2004) ..............................16

*v. Financial Recovery Services, Inc.*, 2010 WL 5209350, *3 (M.D. Fla. Dec. 16, 2010) ......15

*Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017)...........2, 3, 8, 9, 12, 14

*VanHorn v. Genpact Services, LLC*, 2011 WL 4565477 (W.D. Mo. 2/14/11)........................19

*Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054 (9th Cir. 2002).....................................11

*Warnick v. Dish Network LLC,* 2014 WL 12537066 at *17 (D. Colo. Sept. 30, 2014).........14

*Wright v. C.B. of Ga., Inc.,* 548. F.Supp. 591 (N.D. Ga. 1982) ............................................19

**Statutes**

15 U.S.C. § 1692d(5) ................................................................................................................1, 3

15 U.S.C. § 1692k(d) ...............................................................................................................4, 16

15 U.S.C. §§ 1692, *et seq.*........................................................................................................1, 9

15 U.S.C. §§ 1692b-1692j .........................................................................................................10

15 U.S.C. § 1692d ........................................................................................................................9

47 U.S.C. § 227 .........................................................................................................................1, 8

47 U.S.C. § 227(b)(1) .................................................................................................................10

47 U.S.C. § 227(b)(1)(A) ...........................................................................................................13

47 U.S.C. § 227(b)(1)(A)(iii) .......................................................................................................8

Civ. Code § 1788.11(d)................................................................................................................9

Civ. Code § 1788.11(d)-(e) ........................................................................................1, 5, 17, 18

Civ. Code § 1788.11(e)................................................................................................................9

TABLES

Civ. Code § 1788.17 ................................................................................................1, 5, 9, 18

Civ. Code § 1788.2(e) ........................................................................................................5, 17

Civ. Code § 1788.2(f) ................................................................................................................5

Civ. Code § 1788.30(b) .............................................................................................................5

Civ. Code § 1788.30(f) .......................................................................................................5, 16

Civ. Code §§ 1788, *et seq* .....................................................................................................1, 9

Civil Code § 1788.11 ..............................................................................................................17

**Rules**

Fed. R. Civ. Proc. 56(c) ............................................................................................................1

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC
Rcd. 559, 564, ¶ 9 (Jan. 4, 2008) ..........................................................................................2

**TABLES**

# I.    INTRODUCTION

Plaintiff JOHN MCBRIDE filed this action against Defendant RASH CURTIS & ASSOCIATES, a debt collector, on October 6, 2016, alleging (1) both negligent and willful violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), (2) violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"), particularly §1692d(5), and (3) violations of California's Rosenthal Fair Debt Collection Practices Act, Civ. Code §§ 1788, *et seq.* ("Rosenthal Act"), particularly § 1788.11(d)-(e) and § 1788.17.  (**Exhibit 1**, Plaintiff's Complaint, ¶¶ 27-28, 32, 38-40; Undisputed Fact ("SSUF") No. 1.)  Plaintiff prays for an award of statutory damages, actual damages, attorneys' fees, punitive damages, and court costs. (*Id.* at p. 8.; SSUF 2.)

Rash Curtis filed its answer on December 27, 2016, in which it asserted several affirmative defenses, including the first affirmative defense that Plaintiff's complaint fails to state facts sufficient to constitute a cause of action, and the third affirmative defense that Rash Curtis has no liability under the TCPA because Rash Curtis had the "prior express consent" of Plaintiff. (**Exhibit 2**, Defendant's Answer p. 4; SSUF 3.)

Rash Curtis now brings this motion pursuant to Federal Rule of Civil Procedure 56(c) for summary judgment or partial summary judgment as to each individual cause of action.  As shown below, none of Plaintiff's claims in the complaint have merit.  There is no triable, genuine issue of material fact for a jury.  Rash Curtis is entitled to summary judgment or partial summary judgment as a matter of law.

## A.    Defendant is Entitled to Summary Judgment as to Plaintiff's TCPA Cause of Action Because Defendant Did Not Use *an* "ATDS" Dialing System

Rash Curtis submits that Plaintiff's TCPA claim is not actionable, and that Rash Curtis is entitled to summary judgment on Plaintiff's TCPA cause of action.  Fed. R. Civ. Proc. 56(c).  As a preliminary matter, the recent case of *ACA Int'l v. FCC,* 2018 WL 1352922 (D.C. Cir. Mar. 16, 2018) vacated the FCC's previous order which had found that a predictive dialing telephone system constituted an "ATDS" within the meaning of the TCPA.  The D.C. Circuit instead ruled that an "ATDS" must have the ability to generate (that is, "create") random or sequential numbers and dial those numbers. *Id.* at *11-*12.

The dialers used by Rash Curtis to make the calls in question had no present ability to generate (that is, "create") random or sequential numbers, but instead could only load numbers off a specific list

1  of debtors. In short, Rash Curtis' dialers cannot be categorized as ATDS's under the TCPA.

2  (Declaration of Robert Keith ("Keith Decl.") ¶ 26; SSUF 29.) Because the use of an "ATDS" is an

3  essential element for establishment of a TCPA violation, and the predictive dialing technology used by

4  Rash Curtis here is not an "ATDS," Plaintiff's TCPA claim fails. *Meyer v. Portfolio Recovery Assocs.,*

5  *LLC,* 707 F.3d 1036, 1043 (9th Cir. 2012).

6  **B.    Defendant is Entitled to Summary Judgment as to Plaintiff's TCPA Cause of Action**

7  **Because Defendant Called Plaintiff's Cell Phone With Prior Express Consent Obtained**
   **From Its Creditor-Client to Whom Plaintiff Had Provided Consent, and Because Plaintiff**

8  **Expressly Consented to be Called by Defendant Directly**

9        The provision of a cell phone number evinces "prior express consent" to be called at the number

10 so provided and this is a "complete defense" to a TCPA claim. *Van Patten v. Vertical Fitness Group,*

11 *LLC,* 847 F.3d 1037, 1044 (9th Cir. 2017); *Hudson v. Sharp Healthcare,* 2014 WL 2892290 at *3 (S.D.

12 Cal. 2014). "Prior express consent" to call Plaintiff on his cell phone was first provided by his wife to

13 the medical provider on whose behalf Rash Curtis was calling; and, secondly, it was provided to Rash

14 Curtis directly when Plaintiff called into Rash Curtis to discuss payment of his wife's debt.

15       A debt collector, such as Rash Curtis, who calls on behalf of the creditor to whom consent has

16 been provided, also operates within that consent. *Hudson v. Sharp Healthcare,* 2014 WL 2892290 at

17 *3; *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 23 FCC

18 Rcd. 559, 564, ¶ 9 (Jan. 4, 2008) (the "2008 TCPA Order").

19       Here, Plaintiff's complaint alleges that Rash Curtis called Plaintiff's cellular telephone number

20 ending in 9189 numerous times in an attempt to collect a debt from his wife, Marianne McBride.

21 (**Exhibit 1**, ¶ 13.) Plaintiff erroneously denies ever giving "prior express consent" to receive the calls.

22 (*Id.* at ¶ 16.)

23       But Plaintiff's wife provided the 9189 number[1] to Rideout in connection with her medical

24 treatment. (Keith Decl. ¶¶ 6-7, 9; **Exhibit 3**, Marianne McBride's Face sheets and Conditions for

25 Admission from Freemont-Rideout Health Group, Rash Curtis 63, 66, 71; SSUF 4.) As discussed,

26 Plaintiff's wife had authority to provide this "shared" number to Rideout. (**Exhibit 7**, RCA 00034.)

27

28 [1] This number was shared by husband (Plaintiff) and wife. (*See, e.g.,* **Exhibit 7**, RCA 00034.)

*Mais v. Gulf Coast Collection Bureau, Inc.,* 768 F.3d 1110, 1119-22 (11th Cir. 2014). Rash Curtis, standing in Freemont-Rideout Health Group's shoes, also possessed the prior express consent to call the shared number. *Hudson, supra,* 2014 WL 2892290 at *3 ("prior express consent" is granted to the collector when the wireless number is provided by the consumer to the creditor during the transaction that resulted in the debt owed.).

"Prior express consent" to be called at the 9189 number was also provided *directly* by Mr. McBride to Rash Curtis during a telephone conversation on July 18, 2014, which he initiated. Mr. McBride affirmatively asked to be called back at the 9189 number. (Keith Decl. ¶ 11-12, 14; **Exhibit 4,** Rash Curtis' Collection Notes/Business Record, 07/18/14 entry, RCA 00005; SSUF 10.)

Consent to call the 9189 number was never revoked, much less expressly; if McBride had, as he alleges, requested Rash Curtis to "quit calling," this communication would have been reflected in Rash Curtis' collection notes which are made contemporaneously during live calls per Rash Curtis' invariable policy to do so. (Keith Decl. ¶¶ 5, 11, 21; *see generally* **Exhibit 4.**) It is not, and the absence of a record in this circumstance is as probative as the record being there. (Keith Decl., ¶¶ 5, 11, 21.)

Likewise, "prior express consent" was separately given to Rash Curtis to contact *Marianne* at the same "shared" 9189 cell number. (Keith Decl. ¶ 8; **Exhibit 5,** Patient Notes for Marianne McBride from Freemont-Rideout Health Group, at RCA 00014.) In short, Rash Curtis was given "prior express consent" to call the 9189 number. (*See also* **Exhibit 7,** RCA 00034.) Prior express consent is a complete defense, and Rash Curtis is entitled to summary judgment on the TCPA claim. *Van Patten, supra,* 847 F.3d at 1045.

**C.   Rash Curtis Is Entitled to Summary Judgment as to Plaintiff's FDCPA Cause of Action As A Matter of Law**

Rash Curtis is alleged to have engaged in harassing, oppressive, or abusive conduct pursuant to 15 U.S.C. § 1692d(5). No evidence shows that Rash Curtis actually caused McBride's cell phone to ring repeatedly or continuously *with an intent* to annoy him, as required by 15 U.S.C. § 1692d(5). (Keith Decl. ¶ 25.) *See, e.g., Arteaga v. Asset Acceptance, LLC,* 733 F.Supp.2d 1218, 1229 (E.D. Cal. 2010) (daily or nearly daily calls alone found not to violate 1692d(5) as a matter of law); *Jiminez v. Accounts Receivable Mgmt.,* 2010 WL 5829206 at *5 (C.D. Cal. 2010) (69 unanswered calls over a 115-day period

- 3 -

1   found not to violate 1692d(5) as a matter of law); *Tucker v. The CBE Group Inc.*, 710 F.Supp.2d 1301,

2   1305-1306 (M.D. Fla. 2010) (up to 7 calls per day found not to violate 1692d(5) as a matter of law);

3   *Jones v. Rash Curtis & Associates,* 2011 WL 2050195, *3 (N.D. Cal. 2011) (179 calls in a year found

4   not to violate 1692d(5) as a matter of law).

5       Here, there is no showing that any of the calls placed to the 9189 number were placed *with the*

6   *intent* to harass, oppress, or abuse Plaintiff required by §1692d(5), and Rash Curtis denies this. (Keith

7   Decl., *passim,* and ¶ 25.)  As a matter of law, the number and frequency of calls alleged by Plaintiff, 11

8   calls over the period of 136 days, which is fewer than one call per week, is not excessive and does not

9   constitute harassment.[2]

10      Rash Curtis also submits that Plaintiff did not suffer cognizable actual injury under the FDCPA.[3]

11  *See, e.g., Beattie v. D.M. Collections, Inc.,* 754 F.Supp. 383, 393-394 (D. Del. 1991).  This is a situation

12  where virtually none of Rash Curtis' communication attempts were successful.  The records demonstrate

13  only three actual conversations occurred from outbound calls initiated by Rash Curtis and placed to  the

14  9189 number (as opposed to other numbers) regarding Marianne's account; these calls occurred on

15  August 14, 2014, August 13, 2015, and October 19, 2015, of which only one call (October 19, 2015) is

16  within the one-year statute of limitations.  (Keith Decl. ¶¶ 11, 18-19, 22; *see generally* **Exhibit 4**; SSUF

17  14, 16-18, 20.)

18      Courts have repeatedly found that collection phone calls made by a debt collector to a debtor,

19  even if "annoying" in the abstract, do not cause the type of emotional distress cognizable under the

20  FDCPA - as a matter of law.  *Beattie, supra,* 754 F.Supp. at 393-394; *see Costa v. National Action*

21  *Financial Services*, 634 F.Supp.2d 1069, 1079 (E.D. Cal. 2008) (emotional distress damages denied

22  because mere annoyance from collection calls is insufficient to give rise to actual cognizable damages)

23  (*citing Ross v. Creel,* 100 Cal.App.4th 736, 746-747 (2002); *compare Girard v. Ball*, 125 Cal.App.3d

24  772, 781-782 (1981) ("annoyance" insufficient).  Here, there is no showing that any of the calls placed

25  _____

26  [2] Rash Curtis is only counting the calls made within the one-year statute of limitations, counting back from the day the complaint was filed on October 6, 2016 (or otherwise were after October 6, 2015).  15 U.S.C. § 1692k(d).

27  [3] This is not an Article III argument, but rather a failure to establish a prima facie case of actual

28  damages.

- 4 -

to 9189 caused Plaintiff any actual injury, and Rash Curtis is entitled to partial summary judgment on this claim.

**D.  Rash Curtis is Entitled to Summary Judgment as to Plaintiff's Rosenthal Act Cause of Action As A Matter Of Law**

Rash Curtis also seeks summary judgment as to Plaintiff's Rosenthal Act claims brought under Cal. Civ. Code §§ 1788.11(d)-(e) and 1788.17. Plaintiff lacks standing to assert a Rosenthal Act claims under §§ 1788.11(d)-(e), because he personally was never a participant in a "consumer credit transaction" as defined by §1788.2(e) that resulted in "consumer debt" as defined by § 1788.2(f). *See Gouskos v. Aptos Village Garrage, Inc.*, 94 Cal.App.4th 754, 759-760 (2001) (a consumer credit transaction does not mean a transaction where services are provided in advance of payment, but rather where a person acquires services *on credit*); Cal. Civ. Code §§ 1788.2(e)-(f). No consumer credit transaction occurred here between Mr. McBride and Rideout.

Plaintiff's Rosenthal Act claims under §§ 1788.11(d)-(e) and 1788.17 also fail as a matter of law because of the lack of actual injury, as discussed above. *See, e.g., Arteaga, supra*, 733 F.Supp.2d at 1229*; Jiminez, supra*, 2010 WL 5829206 at *3; *Jones, supra*, 2011 WL 2050195 at *4 (finding that "[p]laintiff's claims under the Rosenthal Act are practically identical to the federal claims and fail for all the same reasons"). There is also no showing of "willfulness," which is required to obtain statutory damages under §1788.30(b). Eleven calls were attempted over a period of 136 days. There can be no "intent" to harass or annoy as a matter of law under such circumstances.[4] Because Plaintiff suffered no actual injury, and Rash Curtis' volume and pattern of calls do not constitute harassment as a matter of law, Rash Curtis is entitled to summary judgment on this claim.

## II.  FACTUAL BACKGROUND

Plaintiff's wife, Marianne McBride, was treated on numerous dates at Freemont-Rideout Health Group ("Rideout"); she agreed to pay her hospital bills. (Keith Decl. ¶¶ 6-7; **Exhibit 3**, Rash Curtis 64, 67, 70, 72, 74, 76, 78; SSUF 6.)

On multiple occasions, in connection with her medical treatment at Rideout, Marianne provided

---

[4] Again, Rash Curtis is only counting the calls made within the one year statute of limitations, counting back from the day the complaint was filed. Cal. Civ. Code § 1788.30(f).

- 5 -

Plaintiff's name, as her husband, as a contact, and she listed their "shared" his cell phone number, ending in 9189 as a contact number. (Keith Decl. ¶¶ 6-7, 9; **Exhibit 3**, Rash Curtis 63, 66, 71; SSUF 7; **Exhibit 7**, RCA 00034.)

Marianne did not fully pay for her medical treatments, and her *multiple collection accounts* were sent to Rash Curtis for collection by Rideout. (Keith Decl. ¶¶ 10-11; **Exhibit 4**, Rash Curtis 4; *see generally* **Exhibit 6**, Rash Curtis' Debtor Account History for Marianne McBride; SSUF 8.)

On July 17, 2014, *Plaintiff*, Ms. McBride's husband, called into Rash Curtis with respect to his wife Marianne's debts; he informed Rash Curtis that he was trying to find someone to help pay off her accounts so his health savings account could reimburse him. (Keith Decl. ¶¶ 11, 13; **Exhibit 4**, Rash Curtis 5, 7, 8; SSUF 9.)

On July 18, 2014, Plaintiff called into Rash Curtis from the 9189 number; he told Rash Curtis that he was in contact with his medical insurance carrier, and Rash Curtis' collection notes indicate *he expressly asked Rash Curtis for a call back at the 9189 number*. (Keith Decl. ¶¶ 11, 14; **Exhibit 4**, Rash Curtis 5; SSUF 10.) On July 23, 2014, Plaintiff again called into Rash Curtis from the 9189 number, and he asked the Rash Curtis collector for a "statement" of all his wife's bills; he said he would pay the bills the following week. (Keith Decl. ¶¶ 11, 15; **Exhibit 4**, Rash Curtis 5; SSUF 11.) Rash Curtis emailed the statements following the call on July 23, 2014. (Keith Decl. ¶¶ 11, 16; **Exhibit 4**, Rash Curtis 5, 7; SSUF 12.) On August 12, 2014, Plaintiff made another call from the 9189 number, claiming to need an itemized statement, and again indicated he planned on paying his wife's accounts. (Keith Decl. ¶¶ 11, 17; **Exhibit 4**, Rash Curtis 9; SSUF 13.)

On August 14, 2014, Rash Curtis made its *first* outbound call to the 9189 number, which Plaintiff answered; he said he would be receiving an insurance check to pay off the balances. (Keith Decl. ¶¶ 11, 18; **Exhibit 4**, Rash Curtis 9; SSUF 14.)

Rash Curtis' efforts to reconnect with Plaintiff or Marianne McBride were mostly unsuccessful. During the next eighteen months, from August 14, 2014 until February 18, 2016, Rash Curtis made a total of 45 calls to the 9189 number. (Keith Decl. ¶¶ 11, 19; **Exhibit 4**, Rash Curtis 9-13; SSUF 15.) Most of the calls went unanswered, or never went through. (Keith Decl. ¶¶ 11, 19; **Exhibit 4**, Rash Curtis 9-13; SSUF 16.)

- 6 -

On August 13, _2015_, Marianne and Plaintiff simultaneously answered a call from Rash Curtis to their shared 9189 number; they informed the Rash Curtis collector they had paid off the debts entirely and did not owe anything further. This was not true. (Keith Decl. ¶¶ 11, 19; **Exhibit 4**, Rash Curtis 12; SSUF 17.) On October 19, 2015, Plaintiff answered a follow-up call from Rash Curtis; he said that 9189 was _his_ number. (Keith Decl. ¶¶ 11, 19; **Exhibit 4**, Rash Curtis 13; SSUF 18.) According to Rash Curtis' collection notes, neither Plaintiff nor his wife ever told Rash Curtis to "quit calling," or that they were revoking consent to call. (Keith Decl. ¶¶ 11, 19; **Exhibit 4**, Rash Curtis 13; SSUF 19.) After the October 19, 2015 call, Rash Curtis had no further actual conversations with Plaintiff. (Keith Decl. ¶¶ 11, 19; **Exhibit 4**, RCA 000 13; SSUF 20.)

On October 26, 2015, Rash Curtis _manually_ dialed the 9189 number and left a live message for Plaintiff. This call was contemporaneously noted by the collector who placed the call, initialed as "AF" in Rash Curtis' business records (collection notes). (Keith Decl. ¶¶ 11, 23; **Exhibit 4**, RCA 000 13; SSUF 22.)

On November 3, 2015, Rash Curtis manually dialed the 9189 number; there was no answer and Rash Curtis did not leave a message; this event was contemporaneously noted by the collector who placed the call, initialed as "AT" in Rash Curtis' records. (Keith Decl. ¶¶ 11, 23; **Exhibit 4**, RCA 00013; SSUF 23.)

Rideout's patient records for Marianne reflect she had provided the number ending in 9189 as her contact number (which she apparently shares with Plaintiff, her husband). (Keith Decl. ¶ 8; _cf._ **Exhibit 5**, RCA 00014; SSUF 24; **Exhibit 7**, RCA 00034.) This information was transmitted to Rash Curtis.

Rash Curtis attempted seven more calls using its "Global Connect" dialer to the 9189 number between December 9, 2015 and February 18, 2016. None of these calls were answered, and Rash Curtis left no pre-recorded messages. (Keith Decl. ¶¶ 11, 24; **Exhibit 4**, RCA 00013; SSUF 25.)

Other than the calls which Rash Curtis manually dialed, all other calls to 9189 during the relevant time period were placed using "Global Connect;" but the Global Connect dialer has no ability to generate random or sequential numbers, and then automatically dial them; it only has the ability to dial numbers from a list loaded into its computer software. (Keith Decl. ¶ 26; **Exhibit 8**, RCA 00016-00023; SSUF

- 7 -

29.)

A Verizon Wireless unlimited cellular family plan invoice for the billing period of September 17, 2015 through October 16, 2015 identifies the 9189 number as "shared" by Plaintiff and his wife. (Declaration of Mark E. Ellis ¶ 9; **Exhibit 7,** Verizon Wireless invoice for Marianne McBride dated October 16, 2015, RCA 00034; SSUF 26.)

## III. PLAINTIFF'S CLAIMS

### A. The Telephone Consumer Protection Act Claim – 47 U.S.C. § 227

Plaintiff alleges that Rash Curtis violated 47 U.S.C. § 227(b)(1)(A)(iii). Parsing the language of that section of the TCPA, the TCPA restricts calls as follows: "*It shall be unlawful.* . .if the recipient is within the United States *–to make any call (other than* a call made for emergency purposes or *made with the prior express consent of the party called) using any automatic telephone dialing system or an artificial or prerecorded voice.* . . *to any telephone number assigned to a.* . . *cellular telephone service,* . . . *or* any service *for which the called party is charged for the call.*" 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added); *see also Baisden v. Credit Adjustments, Inc.*, 813 F.3d 338, 342 (6th Cir. 2016) (*citing* 47 U.S.C. § 227(b)(1)(A)(iii)).

On March 16, 2018, the D.C. Circuit Court of Appeals, in a groundbreaking decision, found that for a dialer to meet the definition of an "ATDS" under the TCPA, the dialer must have the ability to generate (that is, to create) random or sequential numbers and then automatically dial them. *See ACA Int'l, supra,* 2018 WL 1352922 at *11-*12.

The Ninth Circuit has held that if "prior express consent" exists, it is a complete affirmative defense. *Van Patten, supra,* 847 F.3d at 1046. The TCPA does not define "prior express consent." The Federal Communications Commission ("FCC"), however, pursuant to its rulemaking and interpretative authority under the TCPA, has issued a number of orders outlining the meaning of "prior express consent." *See Van Patten, supra,* 847 F.3d at 1044; *see also Hudson supra,* 2014 WL 2892290 at *3. The FCC has ruled: "[P]ersons who knowingly release their phone number *have in effect given their invitation or permission to be called at the number* which they have given, *absent instructions to the contrary.*" 1992 FCC TCPA Order, 7 FCC Rcd. at 8796, ¶ 31 (hereinafter, the "1992 TCPA Order")

- 8 -

(emphasis added).  When a person provides his or her cellular telephone number to a business, the consumer has provided "prior express consent" to be called *at that number*. *Van Patten, supra,* 847 F.3d at 1044-1047.  In its 2008 TCPA Order, the FCC held: "[W]e conclude that the provision of a cellphone number… reasonably evidences prior express consent…" *See Van Patten, supra,* 847 F.3d at 1044 (*citing Mais, supra,*768 F.3d at 1119-21).

Significantly, the FCC has also ruled that when consent is provided to a creditor, that consent flows to its collection agent as well. *Hudson, supra,* 2014 WL 2892290 at *3.  Specifically, the FCC has ruled: "Calls placed by a third-party collector on behalf of that creditor *are treated as if the creditor itself placed the call.*" 2008 TCPA Order, 23 FCC Rcd. at 565 (emphasis added).

**B.    The Fair Debt Collection Practice Act Claims, 15 U.S.C. §§ 1692,** *et seq.*

Plaintiff next alleges that Rash Curtis' alleged conduct violates 15 U.S.C. §§ 1692d, specifically 1692d(5).  (**Exhibit 1,** ¶¶ 32-33.)  Section 1692d relates to harassment and states, in part: "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. . . the following conduct is a violation of this section…[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously *with intent* to annoy, abuse, or harass any person at the called number…" 15 U.S.C. § 1692d(5) (emphasis added).

**C.    The Rosenthal Fair Debt Collection Practice Act Claims, Cal. Civ. Code §§ 1788,** *et seq.*

Plaintiff alleges that Rash Curtis' conduct caused Plaintiff's telephone to ring repeatedly or continuously with the intent to annoy Plaintiff, in violation of Cal. Civ. Code § 1788.11(d).  (**Exhibit 1,** ¶ 38.)  Furthermore, Plaintiff alleges that Rash Curtis communicated with Plaintiff with such frequency as to be unreasonable, constituting harassment, in violation of Cal. Civ. Code § 1788.11(e).  (**Exhibit 1,** ¶ 39.)  Notably, a "communication" under section 1788.11(e) requires *actual contact* between the debt collector and the debtor.

Lastly, Plaintiff alleges that Rash Curtis did not comply with the provisions of 15 U.S.C. §§ 1692, *et seq.*, in violation of Cal. Civ. Code § 1788.17.  (**Exhibit 1,** ¶ 40.)  Plaintiff's allegation that Rash Curtis violated section 1788.17 of the Rosenthal Act, which requires every debt collector to comply with

- 9 -

the FDCPA, 15 U.S.C. §§ 1692b-1692j is, in other words, a claim that if Defendant violated the FDCPA, it also, *ipso facto,* violated the Rosenthal Act. **(Exhibit 1, ¶ 40.)**

## IV.  ANALYSIS

### A.  Plaintiff's TCPA Claim Fails Because Rash Curtis Did Not Use An "ATDS" to Call Plaintiff

Plaintiff has not met his burden of establishing a *prima facie* case under the TCPA because the dialing technology used by Rash Curtis to place these calls does not have the capacity to generate random or sequential numbers and dial them, as required to be considered an "ATDS" under the TCPA. *See ACA Int'l, supra,* 2018 WL 1352922 at *11-*12. Here, the dialers used by Rash Curtis only possesses the ability to dial numbers which are loaded from a list. There is no cognizable claim under the TCPA because there was no use of an "ATDS." *See Meyer, supra*, 707 F.3d at 1043 ([t]he three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent); 47 U.S.C. § 227(b)(1). Because Rash Curtis' dialers did not have the capacity to generate (create) random or sequential numbers and then automatically call them, they were not an "ATDS" under the TCPA, Rash Curtis is entitled to partial summary judgment on this issue.

### B.  Plaintiff's TCPA Claim is Also Barred by The Affirmative Defense Of "Prior Express Consent"

Even if, *arguendo,* the dialing technology used by Rash Curtis to place these calls constituted an "ATDS," Plaintiff still cannot prevail because Rash Curtis obtained the "prior express consent" to call the 9189 number before making any outbound calls to that number.

#### 1.  Rash Curtis Had Plaintiff's and/or His Wife's "Prior Express Consent" At All Times Either Directly Or Vicariously

"Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Costa, supra,* 634 F.Supp.2d at 1073 (*citing Celotex Corp. v. Catrett,* 477 S.Ct. 2548 (1986)). In *Celotex,* the US Supreme Court held

- 10 -

that: "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 2553. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment…against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 2552.

"[The Ninth Circuit] has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *see also Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996). Rash Curtis submits that there is no genuine issue of material fact here, where Plaintiff's uncorroborated and self-serving assertion that Rash Curtis did not have his "prior express consent" to call 9189 at all times stands in contradiction to Rash Curtis' business records and the supporting Declaration of Bob Keith, discussed *infra*. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." *Celotex, supra,* 477 S.Ct. at 2553.

Here, Rash Curtis obtained, in a number of ways, "prior express consent" to call the 9189 cell number. Rash Curtis first obtained "prior express consent" to call Plaintiff at the "shared" 9189 number when Marianne provided the 9189 number in connection with her medical treatment to Rideout. (Keith Decl. ¶¶ 6-7, 9; **Exhibit 3**, RCA 00063, 00066, 00071; SSUF 4, 7.) Moreover, Rash Curtis separately obtained "prior express consent" to call the shared number when Plaintiff himself called Rash Curtis and expressly requested to be called back at the 9189 phone number. (Keith Decl. ¶¶ 11, 14; **Exhibit 4**, RCA 00005; SSUF 10; **Exhibit 5**, at RCA 00014; *see also* **Exhibit 7**, RCA 00034.)

2. **Plaintiff Did Not Effectively Revoke Consent To Be Called**

At Paragraph 17 of the complaint, Mr. McBride implicitly alleges he revoked (quit calling) consent to call in "September of 2015." (**Exhibit 1**, ¶ 17.) This allegation is curious since the complaint otherwise and inconsistently states he *never* provided consent in the first place. (*Cf.* **Exhibit 1**, Complaint at ¶ 16.) However, Rash Curtis' collection notes show no conversation with Plaintiff during

- 11 -

September of 2015 indicating Plaintiff ever expressly asked Rash Curtis to quit calling. (*See* Keith Decl., *passim.*) As noted above, if such a statement or request had been made, it would be reflected in Rash Curtis' collection notes, but it is not. (Keith Decl., ¶¶ 11, 19.)

While the TCPA does not provide express statutory authorization for revocation of "prior express consent," a consumer's ability to revoke consent is consistent with basic common law principles of consent. *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 270 (3d Cir. 2013). Revocation of consent, however, must be clearly made and clearly express the desire *not to be called*. *See Van Patten, supra*, 847 F3d at 1048. "[T]he TCPA requires – at a minimum – express and clear revocation of consent; *implicit revocation will not do*." *In re Runyan*, 530 B.R. 801, 807 (Bankr. M.D. Fla. 2015) (emphasis added).

Plaintiff alleges that he spoke with Rash Curtis in September of 2015 and, at that time, he purportedly told Rash Curtis that his wife Marianne was "unreachable" at his number ending in 9189. (**Exhibit 1**, ¶ 17.) However, Rash Curtis' collection notes do not indicate that Plaintiff answered any calls or spoke with any representative of Rash Curtis at any point in September of 2015. (Keith Decl. ¶¶ 11, 19; **Exhibit 4**, RCA 00012-00013; SSUF 27.)

Rash Curtis' collection notes *do* indicate that on October 19, 2015, Plaintiff answered a call and merely told the Rash Curtis collector that 9189 was *his number* and then hung up. (Keith Decl. ¶¶ 11, 19; **Exhibit 4**, RCA 00013; SSUF 18.) The collection notes do not mention any express request not to be called or that Marianne was not reachable at 9189. There is no fact indicating Plaintiff, much less his wife who shared that number, expressly revoked consent to be called. (Keith Decl. ¶¶ 11, 19; **Exhibit 4**, RCA 00013.) *In re Runyan*, 503 B.R. at 807.

Furthermore, Marianne's phone number of record on file with Rideout was the 9189 number. (Keith Decl. ¶ 8; **Exhibit 5**, RCA 00014; SSUF 24.) AThe 9189 number is listed as being "shared" by Plaintiff and Marianne on their Verizon Wireless family plan invoice for the period between September 17, 2015 and October 16, 2015. (Ellis Decl. ¶ 9; **Exhibit 7**, RCA 00034; SSUF 26.)

Assuming that Rash Curtis' collection records are accurate, Plaintiff merely stated the number was his only (which was not true according to **Exhibits 5** and **7**). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *First*

- 12 -

*National Bank of Arizona v. Cities Services Co.,* 88 S.Ct. 1575, 1592 (1968). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. (*See Dombrowski v. Eastland,* 87 S.Ct. 1425, 1427 (1967) (*per curiam*); *Cities Services,* supra, 88 S.Ct. at 1592.)

Plaintiff offers nothing than a self-serving allegation that he told Rash Curtis to "quit calling," or the claim that Marianne could not be reached at 9189.

There is no "genuine issue" of fact for which a jury could return a verdict in Plaintiff's favor, and therefore summary judgment is appropriate. *Cities Services Co.,* *supra*, 88 S.Ct. at 1592. Even if Plaintiff told Rash Curtis that 9189 was *his number*, that comment alone *did not clearly express revocation* as required by *Van Patten*. Rash Curtis continued to have Plaintiff's "prior express consent" to place calls to 9189, and it also continued separately to have his wife's consent after the October 19, 2015 conversation.

Rash Curtis, *standing in the shoes of Rideout*, separately had consent to call *Marianne* at the 9189 number. (Keith Decl. ¶ 8; **Exhibit 5**, RCA 00014; SSUF 24.) As discussed above, the FCC has ruled that when consent is provided to one party, that consent flows to its agent as well. 2008 TCPA Order; *Hudson, supra,* 2014 WL 2892290 at *3. "Calls placed by a third-party collector on behalf of that creditor *are treated as if the creditor itself placed the call*." 2008 TCPA Order, 23 FCC Rcd. at 565.

Finally, even assuming *arguendo* that Plaintiff did tell Rash Curtis to stop calling him on October 19, 2015, the *only* autodialed *calls* following the October 19, 2015 conversation, were not placed until *after* November 17, 2015, Rash Curtis had consent *vis-à-vis* Rideout's records to call 9189 as Marianne's number. (Keith Decl. ¶¶ 8, 11, 23; **Exhibit 4**, RCA 00013; **Exhibit 5**, RCA 00014; SSUF 21, 24.) Only *two calls* were placed to Plaintiff at 9189 between October 19, 2015 and November 17, 2015, both of which were dialed *manually*, not automatically, so there can be no liability under the TCPA in any event. (47 U.S.C. § 227(b)(1)(A); Keith Decl. ¶¶ 11, 23; **Exhibit 4**, RCA 00013; SSUF 21-23.)

### 3. The Calls Placed After Consent Was Purportedly Revoked Were Not Made "Knowingly or Willfully" Without Consent

None of the calls placed by Rash Curtis to the 9189 number, including those placed after the conversation with Plaintiff on October 19, 2015, were made with the "knowing or willful" intent required to award treble damages. "*Plaintiff…has to show* that [defendant] *knew* that Plaintiff did not consent to

- 13 -

the phone calls." *Warnick v. Dish Network LLC,* 2014 WL 12537066 at *17 (D. Colo. Sept. 30, 2014) (emphasis added). Because any purported revocation of consent by Plaintiff was not made *clearly and expressly* as required by *Van Patten, supra,* 847 F.3d at 1048, Rash Curtis could not actually know that it was acting without consent. As discussed above, by merely telling Rash Curtis that 9189 was *his* number and then *hanging up,* Plaintiff did not convey a *clear and express* desire not to be called at that number, and did not effectively revoke consent. *Van Patten, supra,* 847 F.3d at 1048. Rash Curtis was *correctly* acting under the impression that "prior express consent" existed to call 9189 *at all times,* including the period following October 19, 2015. Plaintiff has not met his burden of proving that Rash Curtis placed these calls willfully.

**C.     Defendant Is Entitled to Summary Judgment on Plaintiff's FDCPA And Rosenthal Act Claims**

> **1.     Plaintiff Cannot Establish A Violation Under 15 U.S.C. § 1692d(5)**

In determining liability under §1692d, courts consider the volume and pattern of calls made to the debtor. Many courts have granted summary judgment to defendant collectors where the "harassment" constituted, as here, claims of a large volume of calls, but where the collectors were, as here, simply attempting to establish contact with the debtor. *See, e.g., Tucker, supra,* 710 F.Supp.2d at 1305; *Saltzman v. I.C. System, Inc.,* 2009 WL 3190359 (E.D. Mich. 2009).

In *Tucker,* for example, the court granted summary judgment in favor of the debt collector, stating: "Defendant only left a total of six messages, made no more than seven calls in a single day, and did not call back the same day after leaving a message. The evidence demonstrates that [defendant] placed each of its telephone calls with an intent to reach [plaintiff] rather than an intent to harass [her]." *Tucker, supra,* 710 F.Supp.2d at 1305 (emphasis added). And, so it is here.

In *Saltzman,* the court granted summary judgment in favor of the debt collector, stating:

> "The Court finds no evidence in the record from which a reasonable trier of fact could infer that Defendant acted with the requisite "intent to annoy, abuse, or harass" in making the telephone calls at issue. . . Although Plaintiff alleges that she requested Defendant to stop calling her, she did not send Defendant a cease and desist letter, dispute the amount owed, or provide evidence that Defendant has acted in a manner that would be actionable as harassment, oppression or abuse. . . At Plaintiff's deposition, she testified that she did not answer the vast majority of Defendant's telephone calls, as she recognized Defendant's telephone number on her caller I.D. Plaintiff further testified that she did not recall Defendant leaving

- 14 -

any voice messages for her. The record also indicates a significant disparity between the number of telephone calls placed by Defendant and the number of actual successful conversations with Plaintiff—a ratio of, at best, 1:5. This suggests a "difficulty of reaching Plaintiff, rather than an intent to harass."

Beyond the broad allegations contained in her Complaint, Plaintiff has failed to point to any specific circumstances surrounding these telephone calls that would show any intent, on the part of Defendant, to harass, annoy or abuse. Plaintiff has not pointed to any evidence in the record regarding the amount, frequency, pattern, or content of Defendant's calls that would suggest anything other than a legitimate, albeit persistent, effort to reach her. As the FDCPA does not prohibit such legitimate attempts to contact a debtor, and due to Plaintiff's failure to produce evidence demonstrating a genuine issue of material fact, Defendant is entitled to summary judgment in its favor on this claim."

*Saltzman, supra,* 2009 WL 3190359, at *7 (internal citations and footnotes omitted).

In short, a high number of *calls*, by itself, has repeatedly been found <u>*not*</u> to constitute a violation of the FDCPA – as a matter of law. Here, Rash Curtis was trying to reestablish contact, as specifically requested by Plaintiff, to follow up on his assertion that he had been in contact with his insurance company and intended to pay off the accounts. (Keith Decl. ¶¶ 11, 14-15, 17-18, 25; **Exhibit 3**, Rash Curtis 5, 9; SSUF 11 & 13.)

Under these circumstances, courts regularly hold that a high volume of calls, without more, reflect only an intent to establish contact, not an intent to annoy, abuse or harass the debtor. *See, e.g., Chavious v. The CBE Group*, 2012 WL 113509, at *2 (E.D. NY 1/12/2012) (36 calls in a 2-month period not actionable as a matter of law); *Carmen v. CBE Group*, 782 F.Supp.2d 1223, 1232 (D. Kan. 2011) (149 calls; collector never reached debtor); *Tucker, supra,* 710 F.Supp.2d at 1305 (same); *Jones v. Rash Curtis*, 2011 WL 2050195, at *2-3 (N.D. Cal. 2011) (179 phone calls – no violation); *Lynch v. Nelson, Watson & Assoc., LLC*, 2011 WL 2472588, at *2 (D. Kan. 6/11/11) (86 calls over three months – no violation); *Waite v. Financial Recovery Services, Inc.*, 2010 WL 5209350, *3, 6 (M.D. Fla. Dec. 16, 2010) (the court ruled that 132 calls in a nine-month period was not a violation of the FDCPA as a matter of law).

In *Jiminez, supra,* 2010 WL 5829206, the District Court found in favor of the collector as a matter of law, finding that *no* reasonable jury could find that 69 unanswered calls over a 115-day period violated § 1692d(5) of the FDCPA.

In *Arteaga v. Asset Acceptance, LLC,* at 2010 WL 33102059, the court ruled:

- 15 -

[T]he court finds that [defendant]'s conduct did not rise to the level of harassment under section 1692d. . .[plaintiff] presents no evidence that [defendant] called her immediately after she hung up, called multiple times in a single day, called her place of employment, family, or friends, called at odd hours, or called after she requested [defendant] to cease calling. Indeed, [plaintiff] does not claim that she requested [defendant] to cease calling her, and only recalls the substance of one conversation in which [plaintiff] initiated the communication with [defendant]. . .[Plaintiff] fails to cite a single case in which "daily" or "nearly daily" phone calls alone raises an issue of fact as to these claims. Rather the case law supports [defendant]'s position that. . .the conduct does not constitute harassment as a matter of law.

In *Udell v. Kansas Counselors, Inc.*, 313 F.Supp.2d 1135 (D. Kan. 2004), the court held that four automated telephone calls to consumers over the course of seven days without leaving a message did not, as a matter of law, constitute harassment under the FDCPA.

In *Bey v. Daimler Chrysler Servs., LLC*, 2006 WL 361385 (D.N.J. Feb. 15, 2006), the court granted judgment in favor of the collector even though the collector called multiple times in one day without leaving any messages.

Pursuant to the "jurisdictional" requirement embodied in the FDCPA, "[a]n action to enforce the liability created by this subchapter may be brought...*within **one year** from the date on which the violation occurs*." 15 U.S.C. § 1692k(d) (emphasis added). The Rosenthal Act likewise requires that "[a]ny action under this section may be brought...*within **one year** from the date of the occurrence of the violation.*" Cal. Civ. Code § 1788.30(f) (emphasis added). Consistent with the applicable one-year statutes of limitation, the allegations here are limited to those calls placed by Rash Curtis within the past year from the date the complaint was filed on October 6, 2016, *i.e.* after October 6, 2015. (**Exhibit 1**, ¶ 13). As such, any calls Rash Curtis may have made to the 9189 number prior to one year before Plaintiff brought this action, or October 6, 2015, should be barred from consideration for the purposes of Plaintiff's FDCPA and Rosenthal Act claims because they are outside of the actionable timeframe, *and* because Plaintiff only appears to complain about the calls placed within the past year as of the commencement of this action.

Here, Rash Curtis called the 9189 number *11 times* during the period beginning October 6, 2015. The last call was on February 18, 2016 (not even once per week). (Keith Decl. ¶¶ 11, 19-20; **Exhibit 4**, RCA 00013; SSUF 28.) Rash Curtis' records prove that it *only ever had one actual conversation* with Plaintiff during this *nineteen-week period*, and it *never called his and his wife's cell phone more than*

- 16 -

*once per day*. (Keith Decl. ¶¶ 11, 19-20; **Exhibit 4**, RCA 00013; SSUF 28.) There is simply no evidence from which a finder of fact could reasonably infer that Rash Curtis engaged in "harassing" conduct or acted with the "intent" to annoy or oppress Plaintiff (15 U.S.C. § 1692d(5); Civil Code § 1788.11), and Plaintiff's claim fails as a matter of law. As such, Rash Curtis is entitled to partial summary judgment on Plaintiff's FDCPA claim.

**2. Plaintiff Lacks Standing to Assert a Rosenthal Act Claim Under Cal. Civ. Code §§ 1788.11(d)-(e)**

Plaintiff's claims under Cal. Civ. Code §§ 1788.11(d)-(e) should likewise be dismissed because Plaintiff lacks standing. To assert Rosenthal Act claims under §§ 1788.11(d)-(e), the debt must arise out of a "consumer credit transaction" as defined by §1788.2(e) that resulted in "consumer debt" as defined by §1788.2(f). No such transaction is present here. *See Gouskos, supra,* 94 Cal.App.4th at 759-760. In *Gouskos*, the court found that a consumer credit transaction does not mean a transaction where services are provided in advance of payment, *but only where a person acquires services on credit*, which is not the case here. Marianne McBride simply failed to pay her medical bills which she had expressly agreed to pay. The payment arrangement for her treatments was not on an extension of consumer credit. Payment was immediately due. (*See, e.g.* **Exhibit 3**, at RCA 00064, 00067, 00070, 00072, 00074, 00076, 00078.) As such, Rash Curtis is entitled to partial summary judgment on Plaintiff's claims under §§ 1788.11(d)-(e) because Plaintiff cannot establish a consumer credit transaction here.

**3. Plaintiff Cannot Establish A Separate Violation Under Cal. Civ. Code §§ 1788.11(d)-(e)**

In addition to lacking *standing* to assert these Rosenthal Act claims, Plaintiff's claims under Cal. Civ. Code §§ 1788.11(d)-(e) also fail because the volume and pattern of calls does not constitute actionable harassment *as a matter of law* based on Rash Curtis' alleged conduct. Section 1788.11(d) is only violated when a debt collector causes a telephone to ring repeatedly or continuously to annoy the person called, and § 1788.11(e) is only violated when a debt collector communicates, by telephone or in person, with the debtor with such frequency as to be unreasonable and to constitute harassment to the debtor under the circumstances. Section 1788.11(e) requires *actual contact* between the debt collector

and the debtor.

As with the FDCPA, the Rosenthal Act was not violated here because Rash Curtis only placed *11 calls in 136 days*, and *never more than one call per day*, which resulted in *only one actual conversation*. *See, e.g., Arteaga, supra,* 733 F.Supp.2d at 1229 (daily or nearly daily calls alone found not to violate § 1692d(5) as a matter of law); *Jiminez, supra,* 2010 WL 5829206 at *5 (69 unanswered calls over a 115-day period found not to violate 1692d(5) as a matter of law); *Tucker, supra,* 710 F.Supp.2d at 1305-1306 (up to 7 calls per day found not to violate 1692d(5) as a matter of law); *Jones, supra,* 2011 WL 2050195, *3 (179 calls in a year found not to violate 1692d(5) as a matter of law). Because Rash Curtis had no intent to annoy Plaintiff, and the pattern and volume of calls does not amount to harassment *as a matter of law*, Rash Curtis is entitled to partial summary judgment on Plaintiff's claims under §§ 1788.11(d)-(e).

## 4. Plaintiff's Rosenthal Act Claim Under Cal. Civ. Code § 1788.17 Fails As A Matter Of Law Because Rash Curtis Did Not Violate the FDCPA

Plaintiff's Rosenthal Act claim under Cal. Civ. Code § 1788.17 should be dismissed because relief may only be granted under *§1788*.17 where a defendant has failed to comply with the FDCPA. *See* Cal. Civ. Code § 1788.17 (which provides a remedy under state law for violations of 15 U.S.C. §§ 1692b-g). Rash Curtis has not violated the FDCPA, so Plaintiff has no cognizable claim under §1788.17. As discussed, Plaintiff's FDCPA claim under 15 U.S.C. § 1692d(5) fails as a matter of law because there is no evidence that Rash Curtis acted with the intent to annoy, abuse, or harass Plaintiff. (Keith Decl. ¶ 25.) Therefore, Plaintiff's Rosenthal Act claim under §1788.17 must also fail as a matter of law, and Rash Curtis is entitled to partial summary judgment on this claim.

## 5. Plaintiff Cannot Demonstrate That He Suffered Legally Cognizable Actual Injuries In The Form Of Emotional Distress, and Defendant Seeks Partial Summary Judgment As A Matter Of Law Under the FDCPA and Rosenthal Act On His Actual Damages Claim

Our courts have long *recognized* that debt collection naturally causes embarrassment and annoyance. The legislative history of the FDCPA sheds light on the type of behavior that is deemed a violation, which includes: "[O]bscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's personal affairs to friends, neighbors or

- 18 -

employer. . ." *Christy v. EOS CCA,* 905 F.Supp.2d 648, 654 (E.D. Pa. 2012) (*citing to* S.Rep. No. 95-982 at 2, 1977 U.S. C.C.A.N. 1695, 1696). But the fact that collection calls may be unwelcome, disruptive or annoying does not mean that, without more, they amount to a violation of federal or state law, much less give rise to cognizable actual damages. *Costa, supra,* 634 F.Supp.2d at 1079; *Beattie, supra,* 754 F.Supp. at 393-394; *Bieber, supra,* 631 F.Supp. at 1417; *Wright v. C.B. of Ga., Inc.,* 548. F.Supp. 591 (N.D. Ga. 1982); *Christy, supra,* at 654 ("Notably, §1692d 'prohibits only oppressive and outrageous conduct'."); *Ross, supra,* 100 Cal.App.4th at 747; *Symonds v. Mercury Savings and Loan Assn.,* 225 Cal.App.3d 1458 (1990); *Bundren v. Superior Court,* 145 Cal.App.3d 784, 789 (1983).

The mere fact a debtor subjectively wishes he or she was not in debt collection, or the calls (during normal business hours) are inconvenient or embarrassing, does not, without more, create a violation. See, e.g., *VanHorn v. Genpact Services, LLC,* 2011 WL 4565477 (W.D. Mo. 2/14/11); *Thomas v. LDG Financial Servs., Inc.,* 463 F.Supp.2d 1370 (N.D. Ga. 2006). Because Plaintiff has failed to show any actual harm caused to him as a result of Rash Curtis' alleged conduct, Rash Curtis is entitled to partial summary judgment on this issue.

## V.   CONCLUSION

With respect to the TCPA, Plaintiff's claim fails because the dialer used by Rash Curtis is not an "ATDS" as defined by the TCPA. "Global Connect" does not have the ability to generate (create) random or sequential numbers and *then* dial them, so it cannot be considered an "ATDS" in the context of TCPA, and there can be no liability thereunder. Furthermore, "prior express consent" to contact Plaintiff on his cell phone, which is a complete defense, was first given when Plaintiff's wife Marianne McBride provided the 9189 number to Rideout, and Rideout then assigned the debt accounts to Rash Curtis. "Prior express consent" was again given orally when Plaintiff called Rash Curtis to discuss payment of Marianne's debt and asked to be called back at that number. Rash Curtis had the "prior express consent" of Plaintiff, as well as Marianne McBride. "Prior express consent" was never revoked, and it remained with Rash Curtis for all relevant times. For the alleged "ATDS" calls placed after November 17, 2015, Rash Curtis had the "prior express consent" of Plaintiff as well as Marianne McBride.

With respect to Plaintiff's FDCPA and Rosenthal Act claims, there is no evidence to suggest Rash Curtis' attempts to establish contact with Plaintiff by calling the 9189 number to follow up on the status of Plaintiff's insurance coverage, as expressly requested by Plaintiff, were intended to harass, oppress, abuse, or annoy Plaintiff. The volume and pattern of calls, as a matter of law, does not demonstrate harassment. Moreover, Plaintiff lacks standing to bring claims under sections 1788.11(d)-(e) of the Rosenthal Act because he did not participant in a "consumer credit transaction" resulting in "consumer debt" as defined by the Rosenthal Act. Accordingly, all causes of action should be dismissed.

Dated: March 22, 2018

ELLIS LAW GROUP LLP

By  /s/ Mark E. Ellis
Mark E. Ellis
Attorney for Defendant
RASH CURTIS & ASSOCIATES