Mark E. Ellis - 127159
Lawrence K. Iglesias - 303700
ELLIS LAW GROUP LLP
1425 River Park Drive, Suite 400
Sacramento, CA 95815
Tel: (916) 283-8820
Fax: (916) 283-8821
mellis@ellislawgrp.com
liglesias@ellislawgrp.com

Attorneys for Defendant RASH CURTIS & ASSOCIATES

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MCBRIDE,<br><br>    PLAINTIFF,<br><br>v.<br><br>RASH CURTIS & ASSOCIATES,<br><br>    DEFENDANT. | Case No.: 2:16-CV-02390 TLN-CKD<br><br>**DEFENDANT RASH CURTIS & ASSOCIATES' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT [FRCP 56(c)]**<br><br>DATE:   May 31, 2018<br>TIME:   2:00 P.M.<br>DEPT:   2, 15TH FL<br>HONORABLE TROY L. NUNLEY |

## I. INTRODUCTION

Rash Curtis committed no violation of the TCPA as to Plaintiff. The dialing technology used by Rash Curtis ("Global Connect") is not an "ATDS" under the TCPA as a *matter of law*. Moreover, Rash Curtis acted with "prior express consent" for all calls made to the 9189 number. Consent was not revoked until Rash Curtis received Plaintiff's letter cease and desist letter on February 5, 2016, even though the letter only effectively revoked consent as to *Plaintiff*, not the separate consent provided by his wife Marianne McBride.

Rash Curtis, standing in the shoes of its client, Rideout, possessed the separate "prior express consent" of Marianne McBride to call the 9189 number based on Rideout's Patient Notes for Marianne McBride, which indicate that the 9189 number was a correct number at which to contact her.

Any alleged mistake Rash Curtis may have made about Plaintiff's "prior express consent" was reasonable, based on Rash Curtis' conversation with Plaintiff when *he called into* Rash Curtis from the 9189 number and *asked for a call back*. *See Chyba v. First Fin. Asset Mgmt., Inc.,* 2014 WL 1744136, at *12 (S.D. Cal. 2014), aff'd, 671 F.App'x 989 (9th Cir. 2016) (defendant not liable under the TCPA for acting in good faith); *see also ACA Int'l v. Fed. Commc'ns Comm'n,* 885 F.3d 687, 707 (D.C. Cir. 2018) ("we consider the caller's reasonableness in relying on consent"). Any alleged mistake Rash Curtis may have made about the "prior express consent" of Marianne McBride does not expose Rash Curtis because Rash Curtis is entitled to rely on the information provided by its client, Rideout. *Id.* at *11-12. Where there is a question as to prior express consent based on the creditor's records, it is the creditor, and not the third-party debt collector, who bears responsibility. *Chyba, supra,* 2014 WL 1744136, at *10.

Plaintiff also lacks Article III standing to assert any claim under the FDCPA because he suffered no concrete and particularized injury. Moreover, Rash Curtis did not place any calls with the <u>intent to harass</u> Plaintiff. Any calls placed to the 9189 number prior to a year before the date that Plaintiff filed his complaint are barred from consideration by the FDCPA's "jurisdictional" limitation. 15 U.S.C. § 1692k(d). Finally, Rash Curtis' conduct does not amount to harassment *as a matter of law*; rather, an attempt to establish contact. *See, e.g., Arteaga v. Asset Acceptance, LLC,* 733 F.Supp.2d 1219, 1229 (E.D. Cal. 2010); *Jiminez v. Accounts Receivable Mgmt.,* 2010 WL 5829206, at *5 (C.D. Cal. 2010); *Tucker v. The CBE Group Inc.,* 710 F.Supp.2d 1301, 1305-1306 (M.D. Fla. 2010); *Jones v. Rash Curtis*

*& Associates*, 2011 WL 2050195, at *3 (N.D. Cal. 2011).

Plaintiff also lacks standing to pursue his claim under California Civil Code sections 1788.11(d) and (e) because Plaintiff did not participate in a "consumer credit transaction" resulting in "consumer debt" as defined by Rosenthal. Cal. Civ. Code §§ 1788.2(e) and (f). Furthermore, section 1788.11(e) only applies to communications between a debt collector and *debtor*. Cal. Civ. Code § 1788.11(e). Rash Curtis did not violate California Civil Code section 1788.17 because claims under that section are derivative of FDCPA claims, and Rash Curtis did not violate the FDCPA. Accordingly, summary judgment is appropriate as to each of Plaintiff's claims.

## II. PLAINTIFF'S TCPA CLAIMS

"The three elements of a TCPA claim are: (1) the defendant called a cellular phone; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036, 1043 (9th Cir. 2012). As discussed *infra*, Plaintiff's TCPA claim fails as a matter of law because (a) Rash Curtis did not use an "ATDS," and (b) separately because Rash Curtis had the prior express consent of Plaintiff or his wife to dial the 9189 number.

### 1. Rash Curtis Did Not Use An "ATDS" As Defined By The TCPA

The TCPA defines an "ATDS" as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). "The Ninth Circuit has held that '[w]hen evaluating the issue of whether equipment is an ATDS, the **statute's clear language mandates** that the focus must be on whether the equipment has the *capacity* 'to store or produce telephone numbers to be called, using a random or sequential number generator.'" *Herrick v. GoDaddy.com LLC,* 2018 WL 2229131, at *3 (D. Ariz. May 14, 2018) (italics in original, other emphasis added). [1]

The "statute's clear language" that a dialing system is only an "ATDS" under the TCPA if it has the present capacity to "produce telephone numbers to be called, using a random or sequential number generator" controls. *Herrick, supra,* 2018 WL 2229131, at *6. The *Herrick* court, following

---

[1] "Capacity" is only defined as *present capacity* and not *potential capacity. See Herrick, supra,* 2018 WL 2229131, at *5 ("The D.C. Circuit Court of Appeals' decision in *ACA Int'l v. FCC* forecloses [p]laintiff's argument that the FCC's expansive interpretation of the term "capacity" [to include *potential capacity*] in its 2015 Order is binding [in the Ninth Circuit].")

- 2 -

*ACA Int'l* and *Satterfield*, found that the dialing system in that case was not an "ATDS" because it "lacked the ability to operate as an autodialer at the time the [call was dialed]." *Id.*

The *Herrick* court found that previous Ninth Circuit decisions adopting the FCC's now-defunct interpretation of an "ATDS" are not binding. *Herrick, supra,* 2018 WL 2229131, at *8 (italics original, other emphasis added). Applying the plain language of the TCPA, the *Herrick* court found:

> "[**The dialer] did not have the ability 'to store or produce numbers to be called, using a random or sequential number generator**.' § 277(a)(1). Numbers that were called could only be inputted into [the dialer] by a preprogrammed file or **list provided by the user**; the [dialer] could not randomly or sequentially generate these numbers **by itself**."

*Herrick, supra,* 2018 WL 2229131, at *8 (emphasis added).

Here, Rash Curtis did not use an "ATDS" as defined by the plain language of the TCPA. 47 U.S.C. § 227(a)(1)(A). Plaintiff is mistaken that Rash Curtis' position on this issue is based purely on *ACA Int'l*; rather, **the plain language** of the TCPA controls, as articulated in *Herrick* and *Satterfield*.

It is undisputed that Rash Curtis' dialing system, Global Connect, can only dial phone numbers of debtors *off a list*, provided by Rash Curtis, and *does not have the capacity to create and dial random or sequential numbers*. (Keith Decl., ¶¶ 1, 2, 26.) Because the plain language of the TCPA must control, the decisions of other courts which did not apply the plain language of the TCPA, "improperly render[ing] the limiting phrase 'using a random or sequential number generator' superfluous" are no longer binding. *Herrick, supra,* 2018 WL 2229131, at *8.

Plaintiff's argument from *Reyes v. BCA Fin. Servs., Inc.,* 2018 WL 2220417 (S.D. Fla. 2018) is unavailing; that court was not guided by the Ninth Circuit's precedent that "[w]hen evaluating the issue of whether equipment is an ATDS, the **[TCPA's] clear language mandates** that the focus must be on whether the equipment has the *capacity* to 'store or produce telephone numbers to be called, using a random or sequential number generator.'" *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 951 (9th Cir. 2009) (emphasis added). Global Connect has no such capacity, and therefore is not an ATDS. (Keith Decl., ¶¶ 1, 2, 26.)

Furthermore, no use of an "ATDS" or "prerecorded or artificial voice" exists where the messages a plaintiff receives are **personalized**, e.g., the collector requests to speak to the debtor by name or by other personalized identifying or account-specific information. *Michaccio v. Hatfield Portfolio Group,*

- 3 -

*LLC,* 2018 WL 1919193, at *1-3 (E.D. Cal. Apr. 24, 2018) (where plaintiff alleged defendant used an "ATDS" using "an artificial or prerecorded voice," the court found that "[b]ecause the messages [p]laintiff received were personalized…the allegations are insufficient to support a conclusion that [defendant] used an ATDS in violation of the TCPA.")

Rash Curtis' delivered no voicemail messages to the 9189 number which were not either left by a live collector, personalized to the debtor, or both.[2] (Keith Decl., ¶¶ 1-3, 23; Supplemental Declaration of Robert Keith ("Keith Supp. Decl."), ¶¶ 1-9.)

Rash Curtis' use of **personalized** menu prompts, *personally addressed to the debtor by name,* does not support the conclusion that Rash Curtis violated the TCPA. *Michaccio, supra,* 2018 WL 1919193, at *3. Plaintiff's TCPA claim is not actionable, because Rash Curtis only used its Global Connect dialer (other than for calls dialed manually), which is incapable of generating random or sequential numbers to call, and can only dial specific debtors off a list, and because all communication attempts were personalized to the debtor. (Keith Decl. ¶¶ 1-3, 26; Keith Supp. Decl. ¶¶ 1-9.)

Plaintiff cites to *Mims v. Arrow Fin. Servs., LLC,* 132 S.Ct. 740, 745 (2012) to make the broad claim that "Congress passed the TCPA to protect individual consumers from receiving intrusive and unwanted calls." Tellingly, Plaintiff does *not actually quote* from *Mims,* because *Mims* was **specifically addressing** "**[u]nrestricted telemarketing**" which is not at issue here. *Mims v. Arrow Fin. Servs., LLC,* 132 S.Ct. 740, 745 (2012) (emphasis added). The contrapositive of Plaintiff's claim about *why* Congress passed the TCPA is true; Congress *did not* pass the TCPA to protect debtors from receiving calls about their debt obligations. Because neither the letter nor the spirit of the TCPA has been violated here, Rash Curtis is entitled to summary judgment on Plaintiff's TCPA claim.

/ / / /

---

[2] The TCPA does not expressly define "prerecorded or artificial voice," however, the term is used throughout the statute paired with language indicating that Congress meant only to prohibit *asynchronous* prerecorded or artificial voice messages. *See, e.g.,* 47 U.S.C. 227(b)(1)(B) (prohibiting the use of artificial or prerecorded voices to "deliver a message"); *see also* 47 U.S.C. 227(d)(3) (prescribing technical standards for systems that are used to "transmit any artificial or prerecorded voice message"). The terms "deliver" and "transmit" are typically only associated with asynchronous communications, e.g., *deliver a text message*, or *transmit a fax*. Rash Curtis submits that this restriction is meant to only apply to asynchronous messages, i.e., voicemail messaging. Even if the Global Connect menu prompt, which invites the called party to connect to a conversation with live collector is considered a "message," all menu prompts were personalized to the debtor.

DEFENDANT RASH CURTIS & ASSOCIATES' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT [FRCP 56(c)]

## 2. Rash Curtis Had Plaintiff's Prior Express Consent

"Prior express consent" is a complete defense to a TCPA claim. *Van Patten v. Vertical Fitness Group, LLC,* 847 F.3d 1037, 1044 (9th Cir. 2017). "Prior express consent" can be established in writing or orally. *Id.* at 1045. As discussed *infra*, Rash Curtis had Plaintiff's consent to call the 9189 number, beginning July 18, 2014, until Rash Curtis received Plaintiff's letter on February 5, 2016. (**Exh. 4**, Rash Curtis 5, 07/18/14 entry.) Additionally, Rash Curtis acquired the separate "prior express consent" of the debtor, Marianne McBride, on November 17, 2015, which it continued to possess throughout the relevant time period. (**Exh. 5**, Patient Notes for Marianne McBride from Rideout, Rash Curtis 14.)

### A. Plaintiff Consented To Receive Calls About His Wife's Debts On July 18, 2014

Plaintiff gave his prior express consent to receive calls at the 9189 number when he called into Rash Curtis on July 18, 2014 to discuss his wife's debts and asked for a call back. (**Exh. 4**, Rash Curtis 5, 07/18/14 entry.) Plaintiff did not provide any number other than the 9189 number during that phone call. (*Id*.) Prior to this conversation, the 9189 number had been provided by Plaintiff's wife to Rideout. (**Exh. 3**, Facesheets, Rash Curtis 63, 66, 71.) Plaintiff's wife, as a member of a shared Verizon family plan of which the 9189 number is a part, had authority to provide the 9189 number to Rideout. *See Lathrop v. Uber Techs., Inc.,* 2016 WL 97511, at *2 (N.D. Cal. 2016). (**Exh. 7**, Verizon Wireless Invoice for Marianne McBride, Rash Curtis 33-35.) By asking for a call back from the 9189 number, which was already provided to Rash Curtis and a part of Rash Curtis' file, Plaintiff removed any restrictions on Rash Curtis' consent to call the 9189 number for emergency purposes only, and established that the 9189 number was an appropriate number for Rash Curtis to contact him about his wife's debt. (**Exh. 3**.)

### B. Plaintiff's Declaration Does Not Create A Triable Issue Of Fact

Plaintiff's declaration claiming to have revoked his consent prior to February 5, 2016 does not create a genuine, triable issue of fact to survive summary judgment. First, Plaintiff's declaration does not contain the solemn swear required under 28 U.S.C. § 1746 which **requires** a declarant to acknowledge that his declaration is "under penalty of perjury that the foregoing is true and correct." 28 U.S.C. § 1764 (McBride Decl., *passim.*)[3] Furthermore, uncorroborated allegations and "self-serving

---

[3] Rash Curtis objects to McBride's Declaration on the basis that it fails to comply with 28 U.S.C. § 1746(2), by failing to contain the solemn swear to the truth of the declaration under penalty of perjury. Strict compliance with

- 5 -

testimony" should not create a genuine issue of material fact which can defeat summary judgment. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

### C. Plaintiff Did Not Revoke His Consent Until February 5, 2016

In an attempt to smear Rash Curtis, Plaintiff's brief misrepresents the ruling in *McMillion v. Rash Curtis & Associates*, 2018 WL 692105, at *7 (N.D. Cal. 2018) by taking language out of context to fit his desired, but inaccurate, conclusion.[4] There, like here, a plaintiff claimed that a previous revocation of consent was made, but that allegation was found to not be supported by the record. *Id.*

Here, on the other hand, Plaintiff only revoked his consent to be called at the 9189 number when Rash Curtis received his letter from counsel on February 5, 2016. (Plaintiff's Exhibit E.) No prior revocation was clearly and expressly made, or it would have been noted in Rash Curtis' business records and Rash Curtis would have stopped calling the 9189 to contact Plaintiff. (Keith Decl., ¶¶ 1-3, 5, 21-22.)

Even assuming *arguendo* that Plaintiff did revoke his consent on October 19, 2015 as he claims, Rash Curtis made no calls using Global Connect to the 9189 number *until after* Rash Curtis received Plaintiff's wife's *separate consent* to be contacted at the 9189 number from Rideout discussed *infra*. (**Exh. 5**, Rash Curtis 14.) Accordingly, Rash Curtis did not violate the TCPA as to Plaintiff.

### 3. Rash Curtis Had Plaintiff's Wife's Prior Express Consent

In the Ninth Circuit, "**[c]alls placed by a third-party debt collector on behalf of [a] creditor are treated as if the creditor itself placed the call**. Furthermore, *if there is a question as to whether express consent has been provided*, the burden is on **the creditor [and not the third-party debt**

---

28 U.S.C. § 1746 is required for a declaration to have evidentiary value. *See Corona v. Quad Graphics Printing Corp.,* 218 F.Supp.3d 1068, 1071 (C.D. Cal. 2016)

[4] Plaintiff's claim that Rash Curtis omits relevant information from its Collection Notes is not supported by the law cited. In *McMillion,* plaintiff *claimed* to have revoked consent prior to April 18, 2016, but upon review, the court found no such revocation was made until that date, despite that plaintiff's unsupported claim that she had. "Plaintiffs proffer Rash Curtis' audio call files which reflect that Adekoya revoked consent on April 18, 2016. During that call, Adekoya stated that 'I believe you sent something to my mom already I told you guys to stop calling me, but you guys keep calling me…' …Defendant's representative replied that she didn't 'see where we've got down not to call you.'…The Court has reviewed the audio file of the April 18, 2016, call and finds that Adekoya "clearly express[ed]…her desire not to receive further calls [in that April 18, 2016 call and not in a previous call].'…Accordingly, the Court GRANTS IN PART plaintiff's motion for partial summary judgment as to whether defendant had prior express consent to call Adekoya with regard to calls received after April 18, 2016. By contrast, in light of defendant's unrebutted showing that Rash Curtis had express consent to call Adekoya prior to the call quoted above, the Court GRANTS IN PART defendant's motion for summary judgment as to calls received on or prior to April 18, 2016." *McMillion v. Rash Curtis & Associates*, 2018 WL 692105 at *7 (emphasis added). *McMillion* has no relevance here.

**collector]** on whose behalf the call is made, and **the creditor [and not the third-party debt collector] bears responsibility for violations** of FCC rules for calls made on its behalf." *Chyba, supra,* 2014 WL 1744136, at *10 (emphasis added).

Here, Rash Curtis cannot be not liable for any error Rideout may have made in its Patient Notes, because calls placed by a debt collector are treated as if the creditor itself placed the call. Rideout's records indicated 9189 was the correct phone number at which to contact Marianne McBride. (**Exh. 5**, Rash Curtis 14.) Rash Curtis, standing in the shoes of Rideout, was entitled to place calls to the 9189 number for Ms. McBride following the November 17, 2015 update to Rideout's records. In the Ninth Circuit, the creditor and not a third-party debt collector bears responsibility for violations of the TCPA based on the mistaken existence of "prior express consent." *Chyba, supra,* 2014 WL 1744136, at *10.

Consent to call Marianne McBride on the 9189 number was not revoked by Plaintiff's letter, as the letter does not clearly and expressly indicate a desire that Rash Curtis not contact Marianne McBride; it does not mention her by name; it does not list any account number associated with her debt. (Plaintiff's Exhibit D.) Because Plaintiff's letter provided so little information, Rash Curtis had to reach out to Plaintiff's counsel to confirm identifying information as to the debt account. (Plaintiff's Exhibit F.) As a cautionary measure, Rash Curtis ceased its attempts to contact Marianne McBride about her debt accounts once her account had been identified. (**Exh. 4**, Rash Curtis 13, 03/10/16 entry; *compare* Plaintiff's Exhibit F.) Rash Curtis had the "prior express consent" to dial the 9189 number from either Plaintiff, or his wife, *or both*, at the time that each call was placed.

**4.     Rash Curtis Acted Reasonably And Did Not Willfully Or Knowingly Violate The TCPA**

The Ninth Circuit has distinguished "willful or knowing" violations as "**intentional violation[s]**," as opposed to "negligent violations," dispelling any notion that the TCPA is a strict liability statute. *Los Angeles Lakers, Inc. v. Fed. Ins. Co.,* 869 F.3d 795, 809 (9th Cir. 2017) (emphasis added). Accordingly, "[i]n 'construing the term 'prior express consent' in section 227(b)(1)(A), **we consider the caller's reasonableness in relying on consent**." *ACA Int'l, supra,* 855 F.3d at 707 (quoting the FCC's 2015 Order, 30 FCC Rcd. 7961, 8001 ¶ 75) (emphasis added); *see also Chyba, supra,* 2014 WL 1744136, at *11-12.

Here, Rash Curtis reasonably relied on the consent given orally by Plaintiff *when he called into*

- 7 -

*Rash Curtis and requested a call back*, and on the documents provided by Rideout listing the 9189 number, particularly the Patient Notes which indicate that the 9189 number was a correct number to contact Plaintiff's wife beginning November 17, 2015. (**Exh. 3**, Rash Curtis 63, 66, 71; **Exh. 4**, Rash Curtis 5, 07/18/14 entry; **Exh. 5**, Rash Curtis 14; Keith Decl., ¶¶ 1-3, 5-9, 11-18.) Rash Curtis reasonably relied on these expressions in forming the basis for its belief that "prior express consent" existed, as debt collectors are entitled to do in the Ninth Circuit. *See ACA Int'l, supra,* 855 F.3d at 707; *see also Chyba, supra,* 2014 WL 1744136, at *11-12. (*Id.*)

Even if, *arguendo*, these documents from Rideout and oral representations by Plaintiff to Rash Curtis did not *actually* establish "prior express consent," the record forecloses any possibility that Rash Curtis "intentionally" violated the TCPA with respect to Plaintiff, and acted no worse than negligently (which Rash Curtis denies). *See Harris v. World Fin. Network Nat. Bank,* 867 F.Supp.2d 888, 895 (E.D. Mich. 2012) (*plaintiff must show* that defendant **actually knew** that plaintiff did not consent to be called). Plaintiff has not proffered any evidence showing that Rash Curtis <u>intentionally</u> violated the TCPA, or <u>actually knew</u> that it acted without consent. Rash Curtis is entitled to summary judgment on this issue.

### III. PLAINTIFF'S FDCPA CLAIMS

#### 1. Plaintiff Lacks Standing To Assert An FDCPA Claim

Plaintiff lacks Article III standing because he has not suffered an "injury in fact" and has only alleged bare a procedural violation of the FDCPA. Article III standing requires that a plaintiff must have "**suffered an injury in fact**…" *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1547 (2016) (emphasis added). The injury must be "concrete *and* particularized," and "must be *de facto,* that is, it must actually exist." *Id.* at 1548 (internal quotations omitted, emphasis in original). "**A violation of the FDCPA alone…does not automatically amount to an injury in fact**." *May v. Consumer Adjustment Company, Inc.,* 2017 WL 227964, at *3 (E.D. Mo. 2017) (emphasis added). "'[A] bare procedural violation…divorced from any concrete harm' cannot confer Article III standing." *Id.* (quoting *Spokeo, supra,* 136 S.Ct. at 1549).

Plaintiff suffered no "concrete and particularized injury" and he lacks Article III standing. His complaint merely alleges: "Plaintiff was harmed and is entitled to damages as a result of Defendant's violations." (**Exh. 1**, at ¶¶ 25, 35, 41.) Plaintiff's complaint claims that Rash Curtis "interfered" with his right to peacefully enjoy a service that he paid for and caused him anxiety and frustration, but does

- 8 -

not allege any *concrete or particularized actual damages*, nor does he show that he sought any treatment or incurred any monetary expense as a result of his frustration. (*Id.*, at ¶ 19, and *passim.*) Under his "unlimited" Verizon family plan, there is no charge per call. (**Exh. 7**., Rash Curtis 33-35)

### 2. Rash Curtis' Conduct Does Not Amount To Harassment As A Matter Of Law

"[Section] 1692d prohibits only oppressive and outrageous conduct." *Christy v. EOS CCA,* 905 F.Supp.2d 648, 654-655 (E.D. Pa. 2012) (internal citations omitted). Plaintiff's claim that intent to harass can be inferred from Rash Curtis' conduct is meritless. First, a debt collector must only cease communication upon written request. 15 U.S.C. § 1692c(c). No written request was made until February of 2016, at which point Rash Curtis was *only* dialing the 9189 number attempting to contact the debtor, his wife. (Keith Supp. Decl., ¶¶ 1-3, 9; **Exh. 4**, Rash Curtis 13.) Second, the pattern and volume of calls does not amount to actionable harassment *as a matter of law*, as discussed in Rash Curtis' motion for summary judgment. Third, Plaintiff's assertion that Rash Curtis' efforts to contact his wife about her debt after receiving his letter (which did not mention his wife) do not give rise to an FDCPA claim. *See Christy, supra,* 905 F.Supp.2d at 654-655 ("the FDCPA does not shield even the least sophisticated debtor where debt collectors only contacted the wrong individuals with regard to the debt.") No FDCPA claim is cognizable, *as a matter of law*.

### IV. PLAINTIFF'S ROSENTHAL ACT CLAIMS

### 1. Plaintiff Lacks Standing To Assert A Violation Of California Civil Code §§ 1788.11(d) and (e)

Plaintiff has no standing under §1788.11(e) which only applies to the debtor, and it is undisputed that the debtor is his wife, and not Plaintiff. (**Exh. 1**, ¶ 13; SSUF 5.) Furthermore, Rosenthal only applies to "consumer credit transactions." Cal. Civ. Code § 1788.2(f). "[A] 'consumer credit transaction' means a transaction…in which property, services or money is acquired **on credit**…" Cal. Civ. Code § 1788.2(e) (emphasis added). Debt incurred by failing to pay for medical treatment is not "acquired on credit" as defined by Rosenthal, as the charges for service are due immediately. *Cf. Gouskos v. Aptos Vill. Garage, Inc.,* 94 Cal.App.4th 754, 759 (Ct App. 2001).

Plaintiff's argument that a consumer can unilaterally create "consumer credit" by agreeing to pay for a service, and then refusing to do so, is not persuasive. Such conduct creates a *debt obligation* for

- 9 -

breach of contract, but where there is no mutual assent that the service would be rendered <u>on credit</u>, no consumer credit transaction exists. Cal. Civ. Code § 1788.2(e). Tellingly, Plaintiff has not cited to any case where unpaid medical debt is characterized as "consumer debt" under Rosenthal.

**2.    Rash Curtis Did Not Violate The Rosenthal Act**

"Plaintiff's claims under the Rosenthal Act are practically identical to the [FDCPA] claims and fail for all the same reasons." *Jones, supra,* 2011 WL 2050195, at *4. Rash Curtis has produced admissible evidence that it did not intend to harass Plaintiff, which Plaintiff has not refuted with any admissible evidence. (Keith Decl., ¶¶ 1-3, 5, 25.)  Furthermore, Plaintiff has not meaningfully distinguished the many cases cited in Rash Curtis' motion for summary judgment establishing that the volume and pattern of calls here does not amount to harassment *as a matter of law*.

## V.    CONCLUSION

This Court should grant Rash Curtis' motion for summary judgment or partial summary judgment.

Dated: May 24, 2018

                                       ELLIS LAW GROUP LLP

                                       By  /s/ *Mark E. Ellis*
                                             Mark E. Ellis
                                             Attorney for Defendant
                                             RASH CURTIS & ASSOCIATES

- 10 -

DEFENDANT RASH CURTIS & ASSOCIATES' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT [FRCP 56(c)]