Mark E. Ellis - 127159
Lawrence K. Iglesias - 303700
ELLIS LAW GROUP LLP
1425 River Park Drive, Suite 400
Sacramento, CA  95815
Tel: (916) 283-8820
Fax: (916) 283-8821
mellis@ellislawgrp.com
liglesias@ellislawgrp.com

Attorneys for Defendant RASH CURTIS & ASSOCIATES

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MCBRIDE,<br><br>PLAINTIFF,<br><br>v.<br><br>RASH CURTIS & ASSOCIATES,<br><br>DEFENDANT. | Case No.:  2:16-CV-02390 TLN-CKD<br><br>**DEFENDANT RASH CURTIS & ASSOCIATES' NOTICE OF SUPPLEMENTAL AUTHORITY** |

Defendant RASH CURTIS & ASSOCIATES, by and through its undersigned counsel, respectfully submits this Notice of Supplemental Authority to direct the Court to the only two Circuit Court level decisions as of date to interpret the effect of *ACA Int'l* on the issue of whether a telephone system constitutes an "ATDS" under the TCPA: *Dominguez v. Yahoo, Inc.*, No. 17-1243, 2018 WL 3118056 (3rd Cir. June 26, 2018), and; *King v. Time Warner Cable Inc.*, No. 15-2474-CV, 2018 WL 3188716 (2nd Cir. June 29, 2018).

**A.**     ***Dominguez v. Yahoo, Inc.***

In *Dominguez*, the Third Circuit excluded expert testimony as to whether a phone system which automatically sent an SMS notification upon receipt of an email to a cellular telephone number was an "ATDS" under the TCPA. *Dominguez, supra,* 2018 WL 3118056, at *3-4. The Third Circuit, applying the D.C. Circuit Court's decision in *ACA Int'l v. Fed. Commc'ns Comm'n,* 885

F.3d 687 (D.C. Cir. 2018) which foreclosed any hypothesizing about a dialing system's "future capacity," excluded expert testimony "[b]ecause it does not shed any light on the key factual question actually at issue in this case- *whether the Email SMS System functioned as an autodialer by randomly or sequentially generating telephone numbers, and dialing those numbers…*". *Dominguez, supra,* 2018 WL 3118056, at *3 (emphasis added).

The *Dominguez* court found that there was no "evidence that creates a genuine dispute of fact as to whether [that dialing system] had the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers. *On the contrary, the record indicates that [that dialing system] sent messages only to numbers that had been individually and manually inputted into its system by a user.* … [T]hose messages were sent precisely because the prior owner of Dominguez's telephone number had affirmatively opted to receive them, *not because of random number generation.* The TCPA's prohibition on autodialers is therefore not the proper means of redress." *Dominguez, supra,* 2018 WL 3118056, at *4 (emphasis added).

Importantly, as it pertains to the instant case, the *Dominguez* court rested its decision that the dialing system in that case *did not* constitute an "ATDS" under the TCPA because it did not have *"the present capacity to function as an autodialer by generating random or sequential numbers"* and *"sent messages only to numbers that had been individually and manually inputted into its system by a user."* *Dominguez, supra,* 2018 WL 3118056, at *3-4 (emphasis added).

By the *Dominguez* court's (1) exclusion of the plaintiff's expert witness testimony as irrelevant, and (2) determination that the telephone system was not an "ATDS" <u>as a matter of law</u>, the *Dominguez* court foreclosed as irrelevant any inquiry into the *amount* of human intervention necessary to disqualify a dialer as an "ATDS" when the dialer *only* has the capacity to dial phone numbers which are manually entered and not created randomly or sequentially (like the Global Connect dialer used by Rash Curtis)[1]. *Dominguez, supra,* 2018 WL 3118056, at *3-4.

The decision in *Dominguez* makes clear that following *ACA Int'l*, a dialing system *cannot* be considered an "ATDS" <u>as a matter of law</u> if it lacks the present capacity to generate (as in, create)

---

[1] *See* Declaration of Robert Keith, at ¶ 26.

random or sequential telephone numbers and dial them, and only has the capacity to dial telephone numbers manually entered by a user. No further analysis is necessary, and no additional facts or testimony are relevant, when those preclusive facts are established.

**B.**     ***King v. Time Warner Cable Inc.***

In *King*, the Second Circuit remanded a district court decision, where "[t]he district court's interpretation of the [TCPA] relied primarily on a Declaratory Ruling and Order issued by the [FCC] in 2015 that has since been invalidated by the D.C. Circuit Court." *King, supra,* 2018 WL 3188716, at *1 (citing *ACA Int'l, supra,* 885 F.3d at 669).

The *King* court, before undergoing its interpretation "capacity" as it relates to the definition of an "ATDS" under the TCPA, noted that "[e]very exercise in statutory construction must begin with the words of the text." *King, supra,* 2018 WL 3188716, at *4 (citing *Saks v. Franklin Covey Co.,* 316 F.3d 337, 345 (2nd Cir. 2003)). "[W]e must decide independently whether the district court's broad understanding of the 'capacity' a device must have in order to qualify as an ATDS under the TCPA is a supportable interpretation of the statute. We conclude that it is not. … Based on the plain meaning of the statutory text, therefore, we are inclined to adopt a narrower definition of 'capacity' than the one the FCC endorsed in its 2015 order" *Id.,* at *3-4.

While the *King* court acknowledged that the D.C. Circuit Court, in *ACA Int'l,* only invalidated the FCC's 2015 Order and did not necessarily endorse either interpretation of "capacity," the *King* court <u>did</u> endorse the narrower interpretation:

> Although the D.C. Circuit was deciding only whether the FCC's specific interpretation was a reasonable one, rather than announcing what that court itself deemed to be the *best* interpretation of the statute, its analysis informs our understanding of the statutory text. We view the D.C. Circuit's discussion as correctly drawing a distinction between a device that currently has features that enable it to perform the functions of an autodialer – whether or not those features are actually in use during the offending call – and a device that can perform those functions only if additional features are added. <u>We find that distinction persuasive; accordingly, we would conclude that the former category of devices falls within the definition of an ATDS, and the latter does not.</u> *See Herrick v. GoDaddy.com LLC,* No. CV-16-00254-PHX-DJH, 2018 WL 2229131, at *6 (D. Ariz. May 14, 2018)…
> 
> …
> In sum, <u>we conclude that the term 'capacity' in the TCPA's definition

of a qualifying autodialer should be interpreted to refer to a device's current functions, absent any modifications to the device's hardware or software. That definition does not include every smartphone or computer that might be turned into an autodialer if properly reprogrammed, but does include devices whose autodialing features can be activated, as the D.C. Circuit suggests, by the equivalent of 'the simple flipping of a switch.' *ACA Int'l*, 855 F.3d at 696.

*King, supra,* 2018 WL 3188716, at *5-7 (italics in original, underline added).

The *King* court remanded the district court's decision that "'[w]hether [Time Warner] *actually* dialed King's number randomly or from a list is irrelevant' because its system had the '*capacity* to dial random or sequential numbers,' under the FCC's expanded definition of that term" which the *King* court rejected. *King, supra,* 2018 WL 3188716, at *7.

Ultimately, the *King* court held that "when we consider the meaning of the [TCPA] independently, without an administrative interpretation to defer to, the best interpretation of the statutory language is the one suggested by the D.C. Circuit's discussion in *ACA International*: in the TCPA's definition of an autodialer, a device's 'capacity' refers to its current functions absent additional modifications, regardless of whether those functions were in use during the offending call." *King, supra,* 2018 WL 3188716, at *8. As such, the proper analysis for whether a dialer is an "ATDS" following *ACA Int'l* only focuses on whether a dialing system had the present capacity to generate and then dial random or sequential numbers, absent any hardware or software modification. Unless those features can be turned on by the flip of a switch, a dialer is not an "ATDS."

Dated: July 2, 2018

ELLIS LAW GROUP LLP

By  /s/ Lawrence K. Iglesias
    Lawrence K. Iglesias
    Attorney for Defendant
    RASH CURTIS & ASSOCIATES